**Entered on Docket**
**April 27, 2026**
**EDWARD J. EMMONS, CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**



**Signed and Filed: April 27, 2026**

_____
**HANNAH L. BLUMENSTIEL**
**U.S. Bankruptcy Judge**

# UNITED STATES BANKRUPTCY COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

In re: ) Case No. 25-30219 HLB
)
EAZE TECHNOLOGIES INC., ) Chapter 7
)
        Debtor. )
_____ )

### ORDER GRANTING CHAPTER 7 TRUSTEE'S MOTION TO COMPEL TURNOVER

This case came before the court on April 16, 2026 for a hearing on Chapter 7 Trustee Sarah L. Little's Motion to Compel Turnover of Estate Property from Feuerstein Kulick LLP.[1] Feuerstein Kulick LLP (the "Firm") opposed[2] the Motion; the Trustee replied.[3] The court issued an order[4] regarding certain procedural arguments raised in the Opposition. Appearances were as noted on the record.

At the April 16 hearing, the Court issued an oral ruling granting the Motion. After reading its oral ruling into the record, the Court promised to issue this order.

---

[1] Dkt. 57 (the "Motion"), as supported by a series of exhibits (Dkt. 90).

[2] Dkt. 61 (the "Opposition"), as supported by the declarations of Mr. Kieran Ringgenberg (Dkt. 62) and Mr. David Feuerstein (Dkt. 63).

[3] Dkt. 71.

[4] Dkt. 102.

## I.    Factual Background

In late 2021, the Firm represented several FocusGrowth entities[5] in connection with a potential $28,461,538.50 loan to Debtor Eaze Technologies, Inc. (the "FocusGrowth Loan").  The Firm negotiated on behalf of FocusGrowth with Debtor and prepared and negotiated an inter-creditor agreement with Debtor's secured lender and Board of Directors (the "Board") member, Ms. Lisa Leder.

The FocusGrowth Loan never closed, and Debtor decided to explore financing from FoundersJT, LLC ("FJT").  FJT is owned by two Board members:  Mr. James Clark and Mr. Thomas Jermoluk.  In August 2022, the Board approved Debtor to enter into a Note and Purchase Security Agreement with FJT (the "FJT Loan"), in which FJT loaned Debtor approximately $10,350,000.00, with the ability for Debtor to draw up to a total of $36,892,575.00, in exchange for a lien on all Debtor's and any of its subsidiaries' assets. Debtor defaulted on the FJT Loan approximately six months later.

On February 3, 2023, FJT sent Debtor a Notice of Default. Mr. Clark and Mr. Jermoluk then resigned from the Board on February 19, 2023.  On February 27, 2023, FJT accelerated all amounts due under the FJT Loan, later offering Debtor a term sheet to recapitalize the original FJT Loan on February 28, 2023.

On March 9, 2023, the Board formed a special committee to present Debtor's counter to FJT's recapitalization offer and to address potential conflicts at the Board level (the "Special

---

[5] The Firm represented a series of affiliated entities including FocusGrowth Asset Management LP, FocusGrowth Capital Partners LP, and FG Agency Lending LLC (collectively, "FocusGrowth").

Committee"). The Special Committee was comprised of two Board members: Mr. Andrew Schweibold and Mr. David Chao. The founding resolutions provided the Special Committee with the authority to evaluate, negotiate, and enter into the terms of the FJT recapitalization, a comparable alternative, or decline the recapitalization altogether. The Special Committee was "authorized and empowered to retain independent legal counsel to advise it and assist it in connection with fulfilling its duties as delegated by the Board" while Debtor was "authorized and directed to pay all fees, expenses, and disbursements of such legal counsel".

That same day, the Special Committee retained the Firm as counsel. The Firm represented the Special Committee through September 27, 2023 (the "2023 Representation"). But at some point between late 2023 and early 2024, the Special Committee was informally abandoned.

On February 4, 2024, Debtor retained the Firm to represent it in a potential sale of all Debtor's assets to a third party. The Firm represented Debtor through June 14, 2024 (the "2024 Representation").

On May 10, 2024, FJT sent Debtor and its affiliates a Notice of Strict Foreclosure (the "Foreclosure Notice"). The Firm responded to the Foreclosure Notice on May 30, 2024, stating that "[o]n behalf of the [Debtor], please be advised that the [Debtor] hereby objects to the" Foreclosure Notice. Despite further objections, FJT conducted a UCC Article 9 sale of substantially all of Debtor's assets on August 6, 2024 (the "UCC Sale").

Debtor filed its petition for relief under Chapter 7[6] on March 21, 2025. On September 10, 2025, the Trustee sent the Firm a § 542 turnover demand, requesting that the Firm turn over all estate property including financial information, records, and communications pertaining to both the 2023 and 2024 Representations. On February 4, 2026, the Firm responded that it would turn over all non-Special Committee related documents, records, and communications but refused to produce any documents related to the 2023 Representation.

**II. Argument**

The Trustee requests that the Court compel the Firm to turn over all files, documents, records, and communications regarding its representation of Debtor in the years preceding Debtor filing this case, including records from the 2023 Representation. The Trustee seeks to investigate potential causes of action the estate may have against Debtor, its insiders, and its successor entity, Eaze, Inc., relating to the UCC Sale.

The Firm argues that these records are subject to attorney client privilege, that the privilege belongs to the Special Committee alone, and that the Trustee does not have authority to waive that privilege on behalf of the Special Committee. Alternatively, the Firm argues that the Trustee's request is unduly burdensome, demands information that is not valuable to the estate, and seeks records that could be more easily obtained from other subjects of the Trustee's investigation.

---

[6] Unless otherwise indicated, all statutory citations shall refer to Title 11 of the United States Code (the "Bankruptcy Code").

## III. Legal Standard

§ 704 enumerates a Chapter 7 Trustee's statutory duties. One such duty requires the Trustee to "investigate the financial affairs of the debtor."[7]  To assist the Trustee's duties, § 542(a) requires entities in control of property of the estate to "deliver to the trustee, and account for, such property". "[U]nder the broad scope of § 541, even attorney notes and research memoranda that were prepared in representing the debtors are property of the estate."[8]

§ 542(e) provides that "[s]ubject to any applicable privilege, after notice and a hearing, the court may order an attorney, accountant, or other person that holds recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs, to turn over or disclose such recorded information to the trustee."  "A party asserting a privilege under § 542(e) has the burden of establishing entitlement to the asserted privilege."[9]  "Relief under § 542(e) is discretionary and the court can fashion appropriate safeguards to protect the rights of the other party in interest."[10]

---

[7] § 704(a)(4).

[8] In re Hotels Nevada, LLC, 458 B.R. 560, 567 (Bankr. D. Nev. 2011).

[9] In re The Terraces Subdivision, L.L.C., No. A07-00048-DMD, 2007 WL 4287742, at *1 (Bankr. D. Alaska Dec. 5, 2007).

[10] Id.

### IV. Analysis

In Commodity Futures Trading Comm'n v. Weintraub, the Supreme Court held that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications."[11] Neither party points to definitive caselaw regarding whether Weintraub extends to a Chapter 7 Trustee's authority to waive a corporate debtor's special committee's privilege. The Firm relies on In re BCE West, L.P. for the proposition that a bankruptcy trustee does not have the authority to waive a corporate debtor's special committee's privilege.[12] The Trustee cites In re China Medical Technologies, Inc. and In re Old BPSUSH Inc., which both rejected BCE's holding, extended Weintraub, and permitted a trustee to waive a corporate debtor's committee's privilege in response to a trustee's investigation.[13]

In BCE, a Chapter 11 debtor's board of directors established a pre-petition special committee to investigate whether the company should pursue and enter into certain acquisition transactions and other related matters.[14] The special committee was comprised of two non-interested outside directors, and the board resolution establishing the special committee provided that the committee "had the authority to retain its own counsel and

---

[11] 471 U.S. 343, 358 (1985).

[12] See No. M-8-85, 2000 WL 1239117, at *2 (S.D.N.Y. Aug. 31, 2000).

[13] See 539 B.R. 643 (S.D.N.Y. 2015); No. 16-12373 (KJC), 2019 WL 2563442 (Bankr. D. Del. June 20, 2019).

[14] 2000 WL 1239117, at *1.

other experts that it deemed appropriate" at the debtor's expense.[15] The special committee retained independent counsel, and the company later filed for Chapter 11, confirmed a plan, and appointed a plan trustee.[16]

The plan trustee sent the special committee's counsel a subpoena requesting all of counsel's files, documents, and mail relating to their representation of the debtor, its board, and the special committee.[17] The special committee's counsel objected to the subpoena, and the District Court held that because the committee was a separate, distinct entity with independent counsel, the plan trustee could not waive attorney-client privilege on the special committee's behalf.[18] The District Court declined to extend Weintraub to a corporate debtor's special committee, finding that "because the Special Committee is a separate and distinct group from the Board of Directors, with separate legal representation, the privilege afforded it is not the privilege of the corporation, but rather, is the privilege of the Special Committee."[19]

In China Med., a Chapter 15 debtor established a pre-liquidation independent audit committee comprised of board members with the authority to retain separate counsel.[20] The

[15] Id.

[16] Id.

[17] Id.

[18] Id. at *3.

[19] Id. at *2.

[20] 539 B.R. at 646.

committee "legitimately expected that its communications with counsel would be protected against intrusion by management."[21] The court later appointed a Chapter 15 liquidator who requested the audit committee's attorney-client communications.[22] The Bankruptcy Court, relying on BCE, ruled that the audit committee retained privilege to withhold such communications.[23]

The District Court reversed, holding that the liquidator now owned the privilege and could access the records, relying heavily on the Supreme Court's holding in Weintraub.[24] The District Court found that allowing the audit committee to withhold records "would permit the attorney-client privilege to operate 'as a shield against the trustee's efforts to identify' corporate assets 'wrongfully diverted or appropriated' by a corporation's management and thus 'substantially defeat' the Bankruptcy Code's 'goal of uncovering insider fraud' — all considerations that the Supreme Court found outweighed any interest in preserving management's control in bankruptcy of a corporation's attorney-client privilege."[25]

In Old BPSUSH, a Chapter 11 debtor formed a pre-petition audit committee which "was organized as an independent body, created and governed by a separate charter, with the right and power to engage independent counsel with separate attorney-client

---

[21] Id. at 655.

[22] Id. at 646.

[23] Id.

[24] Id. at 658.

[25] Id. at 657 (quoting Weintraub, 471 U.S. at 353-54).

privileges and other protections."[26]  Once the debtor confirmed its plan and appointed a liquidating trustee, the trustee requested the audit committee's records under § 542(e), including those subject to attorney-client privilege.[27]  The Bankruptcy Court held that the trustee was entitled to those records, citing China Med. for the proposition that the "Court can see no reason why the turnover of attorney-client communications to a trustee or liquidator in bankruptcy would impede the monitoring and oversight functions of a truly independent . . . committee."[28]  The court extended Weintraub's privilege analysis to a corporate debtor's committee, recognizing that "the trustee appointed as the representative of a corporate debtor controls the privileges belonging to the independent committee established by the corporate debtor."[29]

The Firm argues that BCE should control because it is more analogous to the facts at hand.  BCE concerned a plan-appointed Chapter 11 Trustee, not a statutorily appointed Chapter 7 Trustee with specific, enumerated duties.  Unlike the BCE trustee, Ms. Little has an express duty to collect and liquidate estate property, investigate the financial affairs of the debtor, and recover fraudulent or preferential transfers of the debtor's property, among others.[30]

---

[26] 2019 WL 2563442, at *2.

[27] Id.

[28] Id. at *5-6 (quoting China Med., 539 B.R. at 657).

[29] Id. at *6.

[30] See § 704(a); Weintraub, 471 U.S. at 352.

The BCE committee was comprised of non-interested outside directors. Here, Mr. Chao and Mr. Schweibold were involved in the decision to accept the FJT Loan while sitting on the Board alongside FJT's owners. This raises questions regarding potential causes of action the estate may have against the Board members and FJT, "all considerations that the Supreme Court found outweighed any interest in preserving management's control in bankruptcy of a corporation's attorney-client privilege."[31]

The facts at hand are materially different than BCE, and the Court is persuaded by China Med. and Old BPSUSH's decision to extend Weintraub. Weintraub firmly establishes that "the trustee of a corporation in bankruptcy has the power to waive the corporation's attorney-client privilege with respect to prebankruptcy communications."[32] The Supreme Court was clear that "the legislative history establishes that § 542(e) was intended to restrict, not expand, the ability of accountants and attorneys to withhold information from the trustee."[33] Both China Med. and Old BPSUSH invoke this expansive interpretation of § 542(e), and the Court sees no reason to artificially limit a trustee's ability to gain important financial and business records when "the Bankruptcy Code gives the trustee wide-ranging management authority over the debtor."[34] After all, "it would often be extremely difficult to conduct this inquiry if the

---

[31] China Med., 539 B.R. at 657.

[32] 471 U.S. at 358.

[33] Id. at 351.

[34] Id. at 352.

Case: 25-30219   Doc# 147   Filed: 04/27/26   Entered: 04/27/26 16:55:10   Page 10 of 12

former management were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files."[35]

The Trustee demands information relating to the Firm's 2023 Representation of the Special Committee. Her request is not overbroad or unduly burdensome; she seeks information directly relevant to her investigation of the Debtor, the UCC Sale, and potential causes of action the estate may have against certain insiders.

**V. Conclusion**

For the reasons stated above, the court **ORDERS** as follows:

**1.** The Motion is hereby **GRANTED.**

**2.** The Firm shall produce all unredacted materials subject to the Trustee's turnover demand no later than **May 18, 2026.** The parties may extend the May 18 production deadline by mutual agreement.

**3.** As to all materials subject to the Trustee's turnover demand that require redaction, the parties shall promptly meet and confer to establish a production timeframe.

**\*\*END OF ORDER\*\***

---

[35] Id. at 353.

## Court Service List