ERIC A. NYBERG, ESQ. (Bar No. 131105)
CHRIS D. KUHNER, ESQ. (Bar No. 173291)
**KORNFIELD, NYBERG, KUHNER & LITTLE, P.C.**
1970 Broadway, Suite 550
Oakland, California 94612
Telephone: (510) 763-1000
Facsimile: (510) 273-8669
Email: e.nyberg@kornfieldlaw.com
Email: c.kuhner@kornfieldlaw.com

Attorneys for Chapter 7 Trustee, Sarah L. Little

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re<br><br>Eaze Technologies Inc.<br><br>Debtor. | Case No. 25-30219 HLB<br><br>Chapter 7<br><br>**MOTION FOR SUBSTANTIVE CONSOLIDATION OF NONDEBTOR GLENARM CAPITAL LLC INTO THE BANKRUPTCY ESTATE OF EAZE TECHNOLOGIES, INC.**<br><br>Date: November 19, 2026<br>Time: 10:00 a.m.<br>Place: Via Tele/Videoconference and/or in person<br>United States Bankruptcy Court, Courtroom 19<br>450 Golden Gate Ave. 16th Fl.<br>San Francisco, CA 94102 |

**TO: THE HONORABLE HANNAH L. BLUMENSTIEL, U.S. BANKRUPTCY JUDGE:**

Sarah L. Little, Chapter 7 Trustee for Eaze Technologies, Inc. (the "Trustee"), by and through undersigned counsel, moves for entry of an order substantively consolidating nondebtor Glenarm Capital LLC, which did business as "Green Dragon," ("Glenarm") with the bankruptcy estate of Eaze Technologies, Inc. ("Eaze" or the "Debtor") *nunc pro tunc* to March 21, 2025, and expressly preserving the Trustee's avoidance powers (this "Motion"). In support, the Trustee states as follows:

## PRELIMINARY STATEMENT

1. Eaze and Glenarm were run, financed, and presented to the market as one enterprise. Since January 28, 2022, Eaze has been Glenarm's sole member and Manager, with "full, exclusive and complete" authority over its affairs. The two companies shared the same chief executive officer, chief financial officer, and decision-makers, and Eaze reported Glenarm's results to investors only on a combined basis. Furthermore, the Board of Directors of Eaze controlled the corporate action of Glenarm, and Glenarm did not have its own board. Glenarm's secured lender, FoundersJT LLC ("FoundersJT"), lent to Eaze "and its subsidiaries" as a single borrower group, and Glenarm signed the loan documents "By: Eaze Technologies, Inc., its Sole Member." FoundersJT cannot claim it relied on Glenarm's separate credit.

2. Consolidation is necessary to reach the transfers that stripped Glenarm of its value prepetition. The August 6, 2024 Article 9 Sale and the staged closings that followed through the Master Purchase Agreement purported to ultimately transfer Glenarm's interests in its licensed Colorado and Florida subsidiaries to Eaze Colorado LLC and Eaze Florida LLC, both of which are wholly owned subsidiaries of Eaze Inc., which was formed on the day of the Article 9 Sale and is an affiliate of FoundersJT.

3. With Glenarm substantively consolidated with the Debtor, the Trustee will have the ability to use her strong-arm powers and avoid those transfers. The Ninth Circuit has approved exactly this remedy: a bankruptcy court may consolidate a nondebtor into a debtor's estate *nunc pro tunc* to the petition date so that the trustee may pursue avoidance actions for the benefit of all creditors. *In re Bonham*, 229 F.3d 750, 765, 768 (9th Cir. 2000). The only potential "harm" the transferees can assert—loss of a timing defense—is not cognizable. *Id.* at 767.

4. The facts contained in this Motion are based on (a) the Declaration of Sarah L. Little, Chapter 7 Trustee of the Eaze estate, attached as **Exhibit A** (the "Little Decl."); (b) the Declaration of Mark A. Platt, attached as **Exhibit B** (the "Platt Decl.") and (c) the documents referenced therein.

## JURISDICTION

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

Venue in this Court is proper under 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

6. The legal authority for the relief requested herein is section 105(a) of title 11 of the United States Code (the "Bankruptcy Code").

## BACKGROUND

7. On March 21, 2025 (the "Petition Date"), Eaze filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. [Docket No. 1].

8. During a continued 341 Meeting of Creditors, the Trustee asked the Debtor's representative and former chief executive officer, Cory Azzalino, why Stachs LLC, which is purportedly wholly owned by the Debtor, filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code on April 11, 2025 (the "Stachs Petition Date") at Case No. 25-30285. Mr. Azzalino testified that the rationale for filing was to "clean up matters" for "any litigation that may be brought forth." Little Decl. ¶ 15. During this same testimony, Mr. Azzalino testified that he was considering a bankruptcy filing for Glenarm. *Id.* Glenarm never filed.

9. Upon information and belief, Glenarm is the holding company for DP Holdings Colorado, LLC and DP Holdings Florida, LLC, which own licensed operating entities that held at least 23 Colorado cannabis licenses and a Florida medical marijuana treatment center license with 22 locations. Little Decl. ¶ 2,3.

10. Eaze acquired Glenarm through an all-stock merger under an Agreement and Plan of Merger dated June 1, 2021, which closed on January 28, 2022. Little Decl. ¶ 4. Glenarm's former owners received Eaze Series E Preferred Stock representing approximately 30% of Eaze. *Id.*

11. Under Glenarm's 2022 Amended and Restated Operating Agreement, Eaze is Glenarm's sole member and Manager, with "full, exclusive and complete" authority over Glenarm's management, and no person may be admitted as a member without Eaze's written consent. *Little Decl.* ¶ 5.

12. After the merger, Eaze and Glenarm operated as one company. Little Decl. ¶ 6. Cory Azzalino was chief executive officer and Francis Handley III was chief financial officer of both

entities. *Id.* In investor presentations in 2022 and 2023, Eaze held itself out as a single vertically integrated multistate operator, reported pro forma results for the combined enterprise, and did not separately report Glenarm's results. Little Decl. ¶ 7.

13. FoundersJT, which owned approximately 31% of Eaze and was controlled by Eaze directors, lent to the enterprise as a whole. Little Decl. ¶ 8,9. Under a Note Purchase and Security Agreement dated as of August 17, 2022 (the "Note"), FoundersJT lent to Eaze and each of its subsidiaries, and Glenarm signed the loan documents "By: Eaze Technologies, Inc., its Sole Member." *Id.* On August 6, 2024, FoundersJT credit-bid the Note debt at a single foreclosure sale of the collateral of Eaze and Glenarm alike and then moved that collateral to its affiliate Eaze Inc. through a Master Purchase Agreement dated August 21, 2024, and a series of staged closings. Little Decl. ¶ 10. Cory Azzalino signed for every seller and every buyer on the Stage A, B, D, and E bills of sale, including Glenarm's; Jim Clark signed for both FoundersJT and Eaze Inc.; and all of those parties used the same West Palm Beach address. Little Decl. ¶ 11.

14. Upon information and belief, the Colorado Marijuana Enforcement Division's approval of the change of ownership of DP Holdings Colorado, LLC took effect on October 15, 2024. Little Decl. ¶.

15. The Trustee contends that these transfers are void, ineffective, or avoidable, and this Motion does not ask the Court to adjudicate those claims. Because the transfers were made by Glenarm, however, the Trustee may pursue them under sections 544, 547, 548, 549, and 550 of the Bankruptcy Code if Glenarm is consolidated with the Eaze estate as of the Petition Date. Consolidation *nunc pro tunc* to March 21, 2025 places both the August 6, 2024 sale and the October 15, 2024 approval within the two-year reach-back period of section 548.

**RELIEF REQUESTED**

16. The Trustee requests an order under section 105(a) of the Bankruptcy Code substantively consolidating Glenarm with the Eaze estate and providing that:

a. All assets, property, interests, and liabilities of Glenarm, including Glenarm's claims and causes of action, are consolidated into and become part of the Eaze estate *nunc pro tunc* to the Petition Date;

b. The Petition Date is the controlling date for all purposes with respect to Glenarm, including measuring the reach-back and limitations periods under sections 544, 546, 547, 548, 549, and 550 of the Bankruptcy Code for transfers of Glenarm's property and obligations incurred by Glenarm;

c. The Trustee's avoidance powers under chapter 5 of the Bankruptcy Code, and all rights of Glenarm and its creditors under applicable non-bankruptcy law, are expressly preserved and may be exercised by the Trustee with respect to transfers made and obligations incurred by Glenarm;

d. All intercompany claims, receivables, and obligations between Eaze and Glenarm are eliminated upon consolidation;

e. Creditors of Glenarm may file proofs of claim in Case No. 25-30219-HLB on or before a date that is 70 days after service of the consolidation order (the "<u>Glenarm Bar Date</u>"), and the July 8, 2025 claims bar date is otherwise neither extended nor reopened;

f. Nothing in the order determines the validity, priority, or extent of any lien or interest asserted against Glenarm's property, or any claim or defense other than the effective date of consolidation, all of which are preserved; and

g. The Trustee, as successor to Eaze's rights as Glenarm's sole member and Manager, is authorized to execute and deliver any documents and take any actions on behalf of Glenarm necessary to implement the order.

## <u>BASIS FOR RELIEF</u>

17. Bankruptcy courts in this Circuit may substantively consolidate related entities under section 105(a), and that power extends to nondebtors. *Bonham*, 229 F.3d at 763–65. In *Bonham*, the Ninth Circuit affirmed consolidation of two nondebtor corporations into a chapter 7 debtor's estate *nunc pro tunc* to the petition date, *id.* at 758, 767–68, and it has since reaffirmed that authority, *see*

*Leslie v. Mihranian*, 937 F.3d 1214 (9th Cir. 2019). *See also Gugino v. Clark's Crystal Springs Ranch, LLC (In re Clark)*, 525 B.R. 107, 126–29 (Bankr. D. Idaho 2014) (consolidating nondebtor LLC and trust with chapter 7 debtor *nunc pro tunc* to petition date). Consolidation may be ordered on motion "as long as there is notice and an opportunity to be heard." *Bonham*, 229 F.3d at 765 n.9.

18. Consolidation is warranted if either "(1) creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit; or (2) . . . the affairs of the debtor are so entangled that consolidation will benefit all creditors." *Bonham*, 229 F.3d at 766. Both factors are met here.

***Creditors Dealt with Eaze and Glenarm as a Single Economic Unit***

19. The first factor is met where the entities do not observe clear distinctions in conducting their business and creditors do not acknowledge their separateness. *Clark*, 525 B.R. at 128; *see also In re Felix*, 572 B.R. 892, 900 (Bankr. S.D. Ohio 2017) (ordering substantive consolidation where the time and expense required to unravel books and records and trace transactions outweighed the prospects of recovery through traditional remedies).

20. This is the precise relationship between Eaze and Glenarm. They shared the same chief executive officer, chief financial officer, board of directors, and decision-makers, and Eaze solicited investment as a single multistate operator with total control over Glenarm and only presented Glenarm as a standalone entity when necessary to comply with regulatory requirements. Little Decl. ¶ 7.

21. Further, (i) Glenarm did not have its own bank account; (ii) cash routinely moved between subsidiaries based on the enterprise's needs; and (iii) intercompany transfers were viewed as having no effect on the consolidated balance sheet. Platt Decl. ¶¶ 4-5.

22. Most tellingly, Glenarm's principal creditor never extended credit on Glenarm's separate identity. FoundersJT lent to Eaze "and its subsidiaries" as a single borrower group, and Glenarm signed only through "Eaze Technologies, Inc., its Sole Member." Little Decl. ¶ 9. FoundersJT was no arm's-length stranger; it was an Eaze insider controlled by the directors who oversaw Glenarm's acquisition and operation. *Id.* ¶ 8. It then credit-bid the debt of the entire Eaze group, not a Glenarm-specific obligation, to take the collateral of every obligor at once. *Id.* ¶ 10. A

lender that underwrites and enforces against an entire enterprise cannot claim reliance on the separate credit of one subsidiary.

***The Entities' Affairs Are Entangled, and Consolidation Will Benefit All Creditors***

23. The second factor considers whether unscrambling the entities' affairs would be so costly "as to threaten the realization of any net assets for all the creditors." *Bonham*, 229 F.3d at 766 (citation omitted). Relevant indicia include consolidated financial statements, unity of interests and ownership, intercorporate guarantees, difficulty in segregating assets and liabilities, and transfers without observance of corporate formalities. *Id.* at 765 n.10.

24. Those indicia are present. Eaze owned 100% of Glenarm and managed it with exclusive authority; Eaze reported Glenarm's results only on a combined basis; Glenarm was a co-obligor on enterprise-wide debt; and Glenarm's subsidiaries were conveyed by the same signatory acting on both sides of each transfer. Little Decl. ¶ 5-11. Separating Glenarm's assets, liabilities, and intercompany positions would require the Trustee to reconstruct records controlled by the very parties whose conduct is at issue, at a cost that would threaten the net recovery for all creditors.

25. Most important, consolidation will benefit all creditors. In *Bonham*, the Ninth Circuit held consolidation proper precisely because "nunc pro tunc consolidation will make it possible for [the trustee] to pursue avoidance actions under §§ 544(b) and 548, benefitting the creditors" of the consolidated entities. 229 F.3d at 768. The same is true here. The transfers of Glenarm's subsidiaries moved one of the valuable, licensed businesses in the Eaze enterprise to insiders, while the liabilities stayed behind with Eaze. Little Decl. ¶ 14. The requested consolidation will provide an avenue for Eaze's creditors, whose capital funded Glenarm's business, to recover that value.

26. FoundersJT may respond that consolidation should be used sparingly and that *Bonham* involved a Ponzi scheme. Neither point helps it. The Trustee seeks consolidation for the narrow purpose *Bonham* endorsed—preserving avoidance actions—and the proposed order preserves every lien, claim, and defense other than the effective date of consolidation. *See* 229 F.3d at 767–68. And the party that would object is the insider lender that itself treated Eaze and Glenarm as one borrower and took both companies' collateral with a single credit bid. Having disregarded Glenarm's separateness when it suited FoundersJT, it cannot invoke that separateness now to shield

the resulting transfers.

## NOTICE

27. The Trustee has served or will serve this Motion and notice of the hearing on: (a) the Office of the United States Trustee; (b) all creditors and parties requesting notice in the Eaze case; (c) Michael G. Kasolas, Chapter 7 Trustee of Stachs LLC; (d) each known creditor of Glenarm, including FoundersJT, Xtraction, and McDermott Will & Emery LLP; (e) the Nevada Department of Taxation, the Colorado Department of Revenue, and the Florida Department of Revenue; (f) Eaze Inc.; and (g) any other party identified through the Trustee's review of Glenarm's books and records. Little Decl. ¶ 20. This notice gives Glenarm's creditors the notice and opportunity to be heard that *Bonham* and *Mihranian* require. *See Bonham*, 229 F.3d at 765 n.9; *Mihranian*, 937 F.3d 1214. No further notice is required.

## CONCLUSION

Eaze and Glenarm operated as one enterprise, borrowed as one, and were foreclosed upon as one. Consolidation *nunc pro tunc* to March 21, 2025, preserves all rights for the Trustee to pursue recovery of the transfers discussed herein under the Trustee's avoidance powers for the benefit of all creditors, and *Bonham* squarely authorizes it.

WHEREFORE, the Trustee respectfully requests that the Court enter the proposed order: (i) substantively consolidating all assets, property, interests, and liabilities of Glenarm into the Eaze estate *nunc pro tunc* to March 21, 2025; (ii) providing that the Petition Date is the controlling date for all purposes with respect to Glenarm, including under sections 544, 546, 547, 548, 549, and 550 of the Bankruptcy Code; (iii) expressly preserving the Trustee's avoidance powers with respect to transfers made and obligations incurred by Glenarm; (iv) eliminating intercompany claims between Eaze and Glenarm; (v) establishing the Glenarm Bar Date without extending or reopening the July 8, 2025 bar date for any other creditor; (vi) preserving all liens, claims, and defenses other than the effective date of consolidation; (vii) authorizing the Trustee to act on behalf of Glenarm to implement the order; and (viii) granting such other relief as the Court deems just.

Dated: October 15, 2026

Kornfield, Nyberg, Kuhner & Little, P.C.

By:/s/ Eric Nyberg
(Bar No. 131105)
Attorneys for Sarah L. Little, Chapter 7 Trustee of the bankruptcy estate of Eaze Technologies, Inc.